UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IBM UNITED KINGDOM LIMITED, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:26-cv-00855 |
| | § | **JURY** |
| JOHN JAY MOORES, | § § | |
| *Defendant.* | § § | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant John Jay Moores ("Moores" or "Defendant") files this Answer and

Affirmative Defenses to the Complaint of IBM United Kingdom Limited's ("IBM

UK" or "Plaintiff")[1], and respectfully shows as follows:

## GENERAL DENIAL

Pursuant to Federal Rule of Civil Procedure 8(b), Defendant denies each and

every allegation in Plaintiff's Complaint except those expressly admitted herein.

---

[1] IBM is being represented in this case by Quinn Emanuel Urquart & Sullivan, LLP ("Quinn Emanuel"), the firm which for more than a dozen years represented Moores in various cases filed in California and elsewhere. Over the period of that representation, Quinn Emanuel became privy to extensive confidential information about Moores, information that will be of value to it in this litigation. And, during the course of that representation, Moores paid it tens of millions in attorneys' fees. Thus, he reserves the right to seek disqualification of Quinn Emanuel in this proceeding.

## NATURE OF THE ACTION

1.    Defendant admits this is a proceeding in which Plaintiff seeks recognition of a foreign country, interlocutory judgment. Defendant denies that the interlocutory judgment is entitled to recognition or enforcement in this Court and denies any characterization of the judgment as "enforceable" in the United States.

2.    Defendant admits that proceedings occurred in England involving certain entities and individuals. In this regard, Defendant notes that the Complaint's characterization of the English proceedings omits material facts, including that the UK Judgment consists mostly of costs and fees under the English Rule. Defendant denies the remaining allegations in Paragraph 2 of the Complaint. To the extent Paragraph 2 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

3.    Defendant denies the allegations in Paragraph 3 of the Complaint. In this regard, Defendant notes that, as set forth in the affirmative defenses below, there are multiple grounds for non-recognition of the English Judgment under the inapplicable Recognition Act, both mandatory and discretionary. To the extent Paragraph 3 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

## BACKGROUND

4.    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 4 of the Complaint and therefore denies them.

### A.    The Parties and Relevant Non-Parties[2]

5.    Defendant admits that IBM UK is incorporated in England and is a wholly-owned subsidiary of IBM Corp. In this regard, Defendant notes that IBM Corp directed IBM UK in the English proceedings and was and remains the real party in interest in the English proceedings. Defendant denies the remaining allegations in Paragraph 5 of the Complaint.

6.    Defendant admits that he resides in Houston, Texas and that he is an investor and beneficial owner of LzLabs, Winsopia, and LzLabs UK. Defendant denies the remaining allegations in Paragraph 6 of the Complaint. To the extent Paragraph 6 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

### B.    The IBM Mainframe Computers And The Neon Litigation

7.    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 7 of the Complaint and therefore denies them.

---

[2] This pleading repeats the subtitles of the Complaint for purposes of organization, but in no sense endorses or vouches for the content of any of them.

8. Defendant admits that he founded Peregrine Bridge Transfer Corp., which later became Neon. Defendant admits that Neon introduced the "zPrime" product in 2009. Defendant denies the remaining allegations in Paragraph 8 of the Complaint.

9. Defendant admits that Neon brought proceedings against IBM Corp in the Western District of Texas in 2009, but, as filed, that case did not include any alleged antitrust allegations. Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

10. Defendant admits that Neon's proceedings against IBM Corp in the Western District of Texas were resolved via settlement and that, pursuant to the terms of that settlement, and not based on any findings by the court, the court permanently enjoined Neon and Moores from marketing its zPrime product. Defendant denies the remaining allegations in Paragraph 10 of the Complaint.

**C. Moores' Unlawful Procurement of Breach And Conspiracy**

11. Defendant denies the allegations in Paragraph 11 of the Complaint.

12. Defendant denies the allegations in Paragraph 12 of the Complaint.

13. Defendant denies the allegations in Paragraph 13 of the Complaint.

14. Defendant denies the allegations in Paragraph 14 of the Complaint.

15. Defendant denies the allegations in Paragraph 15 of the Complaint.

16. Defendant denies the allegations in Paragraph 16 of the Complaint.

**D.    The English Litigation**

17.    Defendant admits the allegations in Paragraph 17 of the Complaint. In this regard, Defendant notes that, Moores was joined in November 2023 despite IBM having knowledge of his involvement with LzLabs, Winsopia, and LzLabs UK at least 5 years before it commenced the English proceedings against LzLabs, Winsopia, and LzLabs UK (and others) on September 21, 2021.

18.    Defendant admits the allegations in Paragraph 18 of the Complaint. In this regard, Defendant notes that, as an agent of those companies, he was incapable of either conspiring with them, or interfering in their contracts.  To the extent Paragraph 18 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

19.    Defendant admits the allegations in Paragraph 19 of the Complaint. To the extent Paragraph 19 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

**E.    All Appeals Have Been Exhausted**

20.    Defendant denies the allegations in Paragraph 20 of the Complaint. IBM, not IBM UK, was then and always has been the real party in interest in the litigation with LzLabs.  To the extent Paragraph 20 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

21.    Defendant denies the allegations in Paragraph 21 of the Complaint.  The relief being sought was always being sought on behalf of IBM.  To the extent Paragraph 21 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

22.    Defendant denies the allegations in Paragraph 22 of the Complaint. To the extent Paragraph 22 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

23.    Defendant admits the allegations in Paragraph 23 of the Complaint.

24.    Defendant admits the allegations in Paragraph 24 of the Complaint.

## JURISDICTION AND VENUE

25.    Defendant admits the allegations in Paragraph 25 of the Complaint. In this regard, Defendant notes that, the Texas Recognition Act is a state-court statute and that a federal court's authority to apply the Texas Recognition Act is a separate question from whether diversity jurisdiction exists.

26.    Defendant admits the allegations in Paragraph 26 of the Complaint.

27.    Defendant admits the allegations in Paragraph 27 of the Complaint.

## ARGUMENT

28.    Defendant denies the allegations in Paragraph 28 of the Complaint. To the extent Paragraph 28 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

**A.     The Recognition Act Applies to the English Judgment**

29.     Defendant denies the allegations in Paragraph 29 of the Complaint. The Recognition Act is a Texas law that only applies in Texas courts.  To the extent Paragraph 29 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

30.     Defendant denies the allegations in Paragraph 30 of the Complaint. To the extent Paragraph 30 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

31.     Defendant denies the allegations in Paragraph 31 of the Complaint. To the extent Paragraph 31 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

32.     Defendant denies the allegations in Paragraph 32 of the Complaint. To the extent Paragraph 32 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

33.     Defendant denies the allegations in Paragraph 33 of the Complaint. To the extent Paragraph 33 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

34.     Defendant denies the allegations in Paragraph 34 of the Complaint. To the extent Paragraph 34 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

**B.      There Are No Grounds for Non-Recognition of the English Judgment**

35.      Defendant denies the allegations in Paragraph 35 of the Complaint. To the extent Paragraph 35 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

**1.      None of the Three Mandatory Grounds for Non-Recognition Under Tex. Civ. Prac. & Rem. Code § 36A.004(b) Exist**

36.      Defendant denies the allegations in Paragraph 36 of the Complaint. To the extent Paragraph 36 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

37.      Defendant denies the allegations in Paragraph 37 of the Complaint. To the extent Paragraph 37 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

38.      Defendant denies the allegations in Paragraph 38 of the Complaint. To the extent Paragraph 38 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

39.      Defendant denies the allegations in Paragraph 39 of the Complaint. To the extent Paragraph 39 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

**2.    None of the Nine Discretionary Grounds for Non-Recognition Under Tex. Civ. Prac. & Rem. Code § 36A.004(c) Exist**

40.    Defendant denies the allegations in Paragraph 40 of the Complaint. To the extent Paragraph 40 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

41.    Defendant denies the allegations in Paragraph 41 of the Complaint. To the extent Paragraph 41 of the Complaint includes conclusions of law, Defendant neither admits nor denies those statements.

## RELIEF SOUGHT

42.    Defendant is not required to respond to Plaintiff's prayer for relief.

## AFFIRMATIVE DEFENSES

43.    Moores, the 81-year-old defendant named in the complaint of IBM UK, has been a successful and visionary entrepreneur from and after his founding of Houston-based BMC Software in 1980.  After BMC Software launched a successful IPO, Moores resigned from his role as chairman of its board, sold most of his stock in the company, moved to San Diego, California, and bought the San Diego Padres, a team that he owned until 2012.  Over the past 35 years, he continued to invest in technology-oriented companies, including another company, ServiceNow, that enjoyed a wildly successful IPO in 2012.  And, he remained interested in creating, and investing in, companies that could provide solutions that would assist customers

9

of International Business Machines Corporation ("IBM") in lowering the cost of using their IBM, mainframe computers.

44.    In parallel with his investing activities over the past 35 years, Moores became a prodigious philanthropist, donating his money, time, and talent to a wide variety of foundations and institutions, including, among others:

- The River Blindness Foundation.

- The University of Houston.

- San Diego State University.

- The Scripps Research Institute.

And, he has served on many boards of consequence, including the boards of: The River Blindness Foundation; The Carter Center; The University of Houston; and The Regents of the University of California System (on which he served as Chairman).

45.    In 2011, in pursuit of his longstanding desire to make mainframe computing more affordable, Moores created a new company, LzLabs.  The mission of LzLabs was to create an application/solution that would enable mainframe computing customers to move their workloads from their IBM mainframes to modern, distributed/open systems environments.

46.    By running applications in modern computing environments, customers could have an alternative to IBM's monopoly and also avoid the outrageous usage fees charged by IBM.

47.    Over the next several years, LzLabs employed a cadre of talented developers who worked on solutions that would enable IBM's existing mainframe customers to migrate applications/workloads to less-expensive computing environments. By 2016, LzLabs was able to promote its application—entitled the Software Defined Mainframe ("SDM")—in a variety of high-notoriety settings. These promotional efforts provoked IBM to create a team to investigate and denounce the SDM offering. The effort to eliminate the SDM from the market was dubbed "Project Eiger." Despite the fact that IBM believed that LzLabs could not have created the SDM without having misappropriated IBM's alleged trade secrets, it initially elected not to file any lawsuit against LzLabs. Instead, it employed a campaign of "fear, uncertainty and doubt" (AKA "FUD") to defend against the SDM. More than 5 years later, in 2021, and after the SDM was continuing to gain traction among mainframe customers, IBM directed IBM UK, its wholly- owned and controlled subsidiary, to sue LzLabs—along with two of its affiliates and two of its officers/directors—for alleged breaches of the IBM Customer Agreement (the "ICA") between Winsopia (a subsidiary of LzLabs) and IBM UK (the "UK Case"). IBM UK accepted the direction of IBM and commenced the UK case and at the direction of IBM alleged that Winsopia had breached the ICA and that the other parties had "procured" the breach (the UK equivalent of "tortious interference").

11

Despite the fact that the case proceeded in the name of IBM UK, IBM was and remains the real party in interest in that case.

48.    In March of 2022, IBM sued LzLabs, along with its affiliate, Texas Wormhole, in Waco, Texas, for alleged patent infringement, theft of trade secrets, and false advertising.  That case remains pending in the United States District Court for the Western District of Texas, Waco Division.  As a result of the Waco Case, it became clear that IBM UK, the plaintiff in the UK Case, owned no intellectual property subject to misappropriation by LzLabs, Moores, or anyone else.  Instead, IBM owned (and owns) all of the intellectual property associated with its mainframe computers and operating systems.  Consequently, IBM UK was in no position to suffer any injury or damages as a consequence of a breach of the ICA by Winsopia.

49.    The UK Case percolated along for two years during which time IBM UK repeatedly misrepresented and misstated to the UK Court that IBM had no connection with IBM UK and had no hand in directing the filing of the case by IBM UK. In truth and in fact, IBM had a direct connection with IBM UK and in fact directed the filing and prosecution of the case. After two years, IBM UK decided to add Moores as a party-defendant.  Based on its pleading, Moores was—as of the fall of 2023—being accused of having procured breaches of a 2013 contract based on conduct dating back to 2011.  The statute of limitations—needless to say—was

among the defenses that Moores pleaded.  He also objected to the jurisdiction of the London court.

50.    The London court conducted a non-jury trial that began in the spring of 2024, and ended in the summer of that same year.  In March of 2025, the London court rendered its judgment, finding that Winsopia (the IBM UK licensee) had breached the ICA, and that LzLabs and Moores—but not the officers of LzLabs, had "procured" the breaches (the "London Judgment").  The Court also found that Moores had conspired with LzLabs—the company he owned and controlled—in connection with those breaches.  Quite incredibly, the London court did not find that IBM UK had been injured or otherwise damaged by the alleged breaches, but, in reliance on the "English Rule," aka "loser-pays," it ordered Moores, Winsopia and LzLabs to pay IBM UK, on a preliminary basis, 20 million pounds in attorneys' fees and costs.  Thus Moores—a tort defendant added to the case at the last minute—wound up on the "wrong end" of a crushing money judgment for attorneys' fees based, in part, on conduct that predated his addition to the lawsuit by more than ten years. To add insult to injustice, the London courts denied Moores the right to appeal the judgment.  As a consequence, the never-appealed, interlocutory judgment became unappealable, despite the London Court having never found that the plaintiff, IBM UK, had suffered any injury or damage.

51.     Throughout the history of LzLabs, Moores was its controlling shareholder and an active participant in its decision-making processes.  As such, as a matter of domestic law (US common law), Moores could never be held liable for interfering with a contract of a company that he controlled; *i.e.,* it is not a tort for a decision-maker to instruct his company to breach a contract.  *See Holloway v. Skinner*, 898 S.W.2d 793, 795–97 (Tex. 1995).  Likewise, he was, as a matter of domestic law, incapable of conspiring with his co-defendants.  *See ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 81 (S.D. Tex. 2007), on reconsideration in part sub nom. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008); *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 100 n.7 (Tex. App.— Houston [14th Dist.] 1995, writ denied) (holding a corporation cannot conspire with itself, no matter how many of its agents may participate in the corporate action).

52.     Now, IBM UK seeks to domesticate the interlocutory London Judgment pursuant to the Texas Recognition Act (the "Act").  Complaint at par. 29. The Act provides that "[a] party seeking recognition of a foreign-country judgment has the burden of establishing that this chapter applies to the foreign-country judgment." Tex. Civ. Prac. & Rem. Code § 36A.003(c).  The Act is a Texas statute that empowers **Texas Courts** to recognize foreign-country judgments: "a court of **this state** shall recognize a foreign-country judgment to which this chapter applies." *Id.* § 36A.004(a).  "This state" is Texas.  This Court is in no sense a Texas court, or,

14

in the language of the statute, "a court of this state." It is, instead, a court created by, and existing under, federal law. Thus, the Recognition Act is not applicable to the claims of IBM UK. I.e., not even a federal court exercising diversity jurisdiction and applying state law can transmogrify the express language of the statute to claim that a state-legislative act, granting authority exclusively to state courts, into a statute that empowers federal courts. Regardless, even under the "Recognition Act," the UK Judgment is not enforceable.

53. Based on the foregoing (and other facts, as will be developed) Moores asserts that recognition of the London Judgment by this or any other Court is prohibited under the Act, because:

- An award of more than $20,000,000 in costs against a tort defendant, in the absence of any finding of actual damages and in contravention of the American Rule, is repugnant to the laws and policies of Texas, and, more generally, the United States.

- A judgment against a tort defendant based, in part, on activities that occurred more than ten years before he was sued, and more than 7 years after the plaintiff discovered the basis of its claims, is repugnant to the laws and policies of Texas, and, more generally, the United States.

- An award of a judgment in favor of IBM UK, as opposed to IBM, the real party in interest, and who controlled and directed the conduct of IBM UK in the English proceedings, with no disclosure to the U.K. court, is facially fraudulent.

- The finding that an agent of a corporation interfered in one of its contracts, and/or conspired with that corporation, is repugnant to the laws and policies of Texas, and, more generally, the United States.

15

## DEMAND FOR JURY TRIAL

54.    Defendant demands a jury trial for all issues deemed to be triable by jury.

Dated: March 25, 2026

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:    */s/ Chris Reynolds*
      **Chris Reynolds**
      Attorney-in-Charge
      State Bar No. 16801900
      Fed. ID No. 4890
      **Nathaniel Bass**
      State Bar No. 24109345
      Fed. ID No. 3861836
      1100 Louisiana Street, Suite 3500
      Houston, Texas 77002
      Telephone: (713) 485-7200
      Facsimile: (713) 485-7250
      creynolds@reynoldsfrizzell.com
      nbass@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANT,
JOHN JAY MOORES**

## CERTIFICATE OF SERVICE

I certify that on this the 25th day of March 2026, a true and correct copy of the foregoing instrument was electronically filed using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nathaniel Bass*
Nathaniel Bass